**T & S PRODUCTS, INC., Appellant,**

v.

**UNITED STATES POSTAL SERVICE, General Services Administration, Appellees.**

**No. 94–5219.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 8, 1995.

Decided Oct. 27, 1995.

David P. Hendel, Vienna, VA, argued the cause for appellant, with whom Michael A. Gatje, Vienna, VA, were on the briefs.

Robert L. Shapiro, Assistant United States Attorney, Washington, DC, argued the cause for appellees, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, Washington, DC, were on the brief. John D. Bates, Assistant United States Attorney, Washington, DC, entered an appearance.

Before EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

The appellant, T & S Products, Inc. ("T & S"), brought a challenge in federal district court to the prices that the General Services Administration ("GSA") charges the United States Postal Service ("USPS") for retail packaging products. USPS entered into a three-phase, nationwide program with GSA beginning in 1994, whereby USPS agreed to purchase all of its retail packaging products exclusively from GSA. At the time when T & S brought its complaint, the program was still in Phase I, which was a pilot test and covered only USPS post offices in the Northeast and New York Metro postal areas. T & S alleged that, because GSA's prices did not include the full cost of transporting the packaging products to USPS post offices, GSA was subsidizing USPS's purchases in violation of 40 U.S.C. § 756 (1988) ("§ 756").[1] T & S alleged that it incurred injury as a result of GSA's underpricing because GSA's lower prices led USPS to select GSA for its sole-source program instead of T & S, and be-

---

1. 40 U.S.C. § 756(b) (1988) states as follows:
   Payment by requisitioning agencies shall be at prices fixed by the Administrator. Such prices shall be fixed at levels so as to recover so far as practicable the applicable purchase price, the transportation cost, inventory losses, the cost of personal services employed directly in the repair, rehabilitation, and conversion of personal property, and the cost of amortization and repair of equipment utilized for lease or rent to executive agencies.

cause GSA's status under the program as USPS's sole provider of retail packaging products precludes T & S from making sales to those post offices covered by the program.

The District Court dismissed T & S's claims against GSA, finding that T & S had failed to establish the injury-in-fact required for constitutional standing, and also finding that T & S lacked prudential standing because the interest sought to be protected by T & S was not within the "zone of interests" protected or regulated by § 756.[2] Because Phase I of the sole-source program only involves postal areas where T & S has no existing contracts, and because progression of the program to areas where T & S does have contracts is contingent upon the results of a customer satisfaction survey that has yet to be conducted, we agree that T & S does not now face actual or threatened injury-in-fact likely to be redressed by a ruling of this court. Moreover, T & S's claims against GSA are premature, because the issue of future injury to T & S may become moot as USPS makes further decisions as to how to proceed with the sole-source program. Thus, T & S presently lacks Article III standing to challenge GSA's prices under the program. In light of this conclusion, we have no occasion to reach the issue of whether T & S also lacks prudential standing.

## I. BACKGROUND

In 1991, USPS began considering ways to standardize the appearance, quality, and types of retail packaging products sold at USPS post offices nationwide, and to simplify and centralize the method of procuring such products. From the early stages of the planning process, USPS focused on the ability of GSA, which operates the General Supply Fund through GSA's Federal Supply Service, to conduct a nationwide retail packaging products program. Upon learning of USPS's negotiations with GSA, T & S asked to be considered for any proposed nationwide contract. T & S is a 47–employee, family-owned

business based in Arlington, Texas, engaging in the sale and distribution of retail packaging materials. T & S is currently the largest single supplier of retail packaging products sold at USPS post offices, having separately negotiated contracts with thirty-four of USPS's eighty-five district offices, so that T & S now serves over 20,000 USPS post offices, stations, and branches around the country. T & S currently has no ordering agreements to provide regular service for USPS post offices in the Northeast or New York Metro postal areas, but it has occasionally supplied individual post offices in those areas with packaging products and would like to expand its regular USPS business into those areas.

In early 1994, USPS decided to implement a three-phase, nationwide program under which all of USPS's retail packaging products would be supplied and delivered by GSA. Throughout Phase I, which was still in progress at the time of the District Court action, all USPS post offices in the Northeast and New York Metro postal areas were to obtain their retail packaging products directly from GSA customer supply centers. At the end of Phase I, USPS plans to enlist a market research contractor to perform a customer satisfaction survey. After USPS analyzes the survey results, it will determine whether and how to proceed with the second and third phases of the nationwide program. Under the existing plan, Phase II would extend the sole-source program to USPS post offices in the Pacific postal area, and Phase III would extend the program to the seven remaining postal areas.

Despite T & S's repeated overtures, USPS never seriously considered T & S for the nationwide program, which T & S attributes to the fact that the prices proposed by GSA were lower than the prices that USPS assumed T & S would charge. T & S alleges that the prices GSA agreed to charge USPS are unduly low because they do not rationally account for the full cost of transporting the packaging products to the individual post

**2.** *T & S Products, Inc. v. United States Postal* *Service,* Civ. Action No. 94–896 (D.D.C. May 26,

offices.[3] Thus, T & S argues that GSA is subsidizing USPS's procurement of retail packaging products in violation of the full-cost-recovery provision in § 756, which directs GSA to set its prices so as to include the cost of transporting the products it supplies to government agencies. 40 U.S.C. § 756(b) (1988). T & S further alleges that USPS would have selected T & S as the supplier for the nationwide program but for the discrepancy USPS perceived between GSA's and T & S's prices.

T & S brought suit in the District Court to enjoin USPS from pursuing its sole-source program with GSA and to enjoin GSA from charging prices that fail to recover the full cost of products it provides to USPS. On cross-motions for summary judgment, the District Court dismissed T & S's claims against both USPS and GSA, finding that T & S had failed to establish that it suffered injury-in-fact under Phase I of the sole-source program, and that T & S's allegation of threatened harm under Phases II and III was speculative and not yet ripe for review.[4] The present appeal concerns only the District Court's dismissal of T & S's claims against GSA.[5]

## II. ANALYSIS

■ As the Supreme Court has held, "[t]he doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. City of Jacksonville,* —— U.S. ——, ——, 113 S.Ct. 2297, 2301, 124 L.Ed.2d 586 (1993) (quoting *Lujan v. De-*

*fenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). The doctrine dictates that a party seeking to invoke a federal court's jurisdiction must meet three requirements. First, the party must suffer "injury in fact" that is concrete and particularized, and is also actual or imminent, as opposed to hypothetical or conjectural. Second, the injury must be fairly traceable to the action challenged. Third, there must be a "likelihood," as opposed to mere speculation, that the injury will be redressed by a favorable decision. *Id.* at —— – ——, 113 S.Ct. at 2301–02. T & S submits that USPS's decision to institute its sole-source program with GSA is directly attributable to GSA's alleged violation of § 756, and that GSA's status as USPS's sole provider of retail packaging products under the program subjects T & S to various forms of competitive injury sufficient to satisfy the elements of Article III standing. We disagree.

■ First, there is no evidence that USPS would have contracted with T & S rather than GSA but for GSA's alleged subsidization of its sales to USPS. The record discloses that USPS approached GSA from the early stages of its consideration of the sole-source program and identified a range of benefits from using GSA, including some benefits that companies such as T & S could not offer. For example, GSA has far greater purchasing power because it already supplies the needs of most federal agencies. In addition, GSA agreed to delivery terms under which GSA would remain responsible for the products until they arrived at the destination post offices.[6] The record reflects, therefore, that USPS based its decision to use GSA for the

---

1994), *reprinted in* Joint Appendix ("J.A.") 358.

3. GSA included in its prices a 7.6% mark-up for the cost of transportation, whereas T & S submits that GSA's actual transportation costs range from 24 to 144%—and average 60%—of a given item's cost to GSA. Brief of Appellant at 6–7.

4. *T & S Products, Inc. v. United States Postal Service,* Civ. Action No. 94–896, slip op. at 5–14 (D.D.C. May 26, 1994), *reprinted in* J.A. 362–71.

5. Brief of Appellant at 1.

6. Attachment to letter from Michael T. McDonald, Manager, Field Customer Support, Purchasing, USPS, to Darrah C. Porter, Vice Presi-

dent, Purchasing, USPS (Apr. 8, 1994), *reprinted in* J.A. 132. GSA agreed to deliver the products "f.o.b. destination via U.S. Mail." *Id.* USPS considered that GSA's delivery terms obviated the need for USPS to issue penalty labels, which, when issued, place on USPS responsibility for loss or damage of a product as soon as the product is deposited in the mail stream. *Id.* T & S, on the other hand, has only sold its products to the Postal Service if USPS provided penalty labels, a practice that obscures the true cost to USPS of products purchased from T & S. Letter from Pete Dolder, Manager, USPS, to Don Anna, Purchasing Counsel, USPS (Apr. 1, 1994), *reprinted in* J.A. 133.

sole-source program on a variety of considerations; there is no evidence to suggest that USPS would have selected T & S over GSA even if GSA's prices had included a higher mark-up for transportation costs. Thus, T & S has failed to establish injury-in-fact. Moreover, even if T & S had established injury-in-fact through evidence that USPS originally would have selected T & S over GSA had GSA's prices been higher, there is no evidence that USPS now would abort its sole-source program with GSA and institute a program with T & S if the court required GSA to raise its prices. Thus, since the issue at hand concerns only T & S's attempt to enjoin GSA to charge higher rates, T & S's first claim also fails to establish the redressibility required for Article III standing.

T & S's second and third claims of injury—that implementation of Phase I of the sole-source program with GSA prevents T & S from making further sales to existing customers in the Northeast and New York Metro postal areas, and that Phase I moots T & S's plans to expand its regular business into those areas—also lack support in the record and fail for want of injury-in-fact. Despite a vague assertion that T & S has in the past occasionally supplied retail packaging products to post offices in the Northeast and New York Metro postal areas,[7] there is no indication that T & S had on-going customer relations with particular post offices in the Phase I areas at the time USPS began its test program with GSA. Moreover, it is pure speculation that T & S would be able to expand its business into the Phase I areas but for continued implementation of the sole-source program with GSA. Thus, any alleged injury based on the impact of the sole-source program on T & S's hypothetical sales to post offices in the Phase I areas is insufficiently concrete to satisfy the injury-in-fact requirement of Article III standing. *See Energy Transp. Group, Inc. v. Maritime Admin.*, 956 F.2d 1206, 1215 (D.C.Cir.1992) (The court found the potential competitive harm "too speculative to satisfy Article III's requirement" of concrete injury-in-fact where an unsuccessful bidder challenged the qualification of purchasers who acquired from Maritime Administration tankers for transporting natural gas to the United States, but where the bidder, although in the business of operating commercial vessels for transporting natural gas, did not at that time carry shipments of natural gas to the United States and did not claim to have made particular arrangements enabling it to do so in the future.).

■ Certainly, as T & S submits, T & S will lose sales if USPS elects to move forward with Phases II and III of the sole-source program with GSA, which would involve postal areas where T & S has district ordering agreements. But Phase I of the program is only a test run, and it is uncertain whether or how USPS will decide to proceed with the sole-source program once it has reviewed the results of the customer satisfaction survey to be conducted at the conclusion of Phase I. T & S's claims that GSA's status under the sole-source program has interfered with T & S's dealings with its customers are thus premature because such claims may become moot depending on decisions USPS has yet to make. Moreover, even if the injury to T & S's customer base were actual or imminent, T & S still would lack redressibility because there is no evidence that USPS would abort the sole-source program with GSA even if GSA were enjoined to raise its prices. Thus, just as T & S is unable to establish constitutional standing based on its claim that USPS would have chosen T & S for the sole-source program but for GSA's pricing practices, T & S is also unable to meet the requirements of Article III based on its allegations that the sole-source program with GSA unfairly impinges on T & S's existing business relationships.

### III. CONCLUSION

For the reasons set forth above, the judgment of the District Court is affirmed.

*So ordered.*

---

7. First Supplemental Declaration of Tom Stewart ¶ 8, *reprinted in* J.A. 236.