# Hinesburg Sand & Gravel Co., Inc. v. State of Vermont

[693 A.2d 1045]

No. 95-572

Present: Allen, C.J.,[1] Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed March 28, 1997

---

[1] Chief Justice Allen sat for oral argument but did not participate in this decision.

338

*Robert F. O'Neill, Norman Williams*, and *Eric B. Fitzpatrick* of *Gravel & Shea*, Burlington, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *John K. Dunleavy*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Dooley, J.** Plaintiff Hinesburg Sand and Gravel Company appeals a decision of the Chittenden Superior Court, which dismissed its civil rights action against defendants State of Vermont. and Patrick Garahan, Secretary of the Agency of Transportation,[2] concluding that plaintiff lacked standing to bring the action. We affirm.

---

[2] Plaintiff amended its complaint at the merits hearing to add defendant Patrick Garahan in his official capacity as Secretary of the Agency of Transportation.

Plaintiff supplies crushed and uncrushed gravel for use as a sub-base material to builders of state and local roads who bid on road projects in accordance with state bid specifications. Gravel is the result of natural forces and consists of varying sizes of loose rock. It is different from stone, which must be blasted out of the earth at quarries or from ledges cut along the path of a new highway. Prior to 1989, the Vermont Agency of Transportation (Agency) considered stone and crushed gravel to be equivalent products and so treated them in its bid specifications. In 1989, it adopted a policy of not allowing crushed gravel to be used in areas where stone is available.

The Agency enjoys broad discretion to award highway-construction contracts "on terms as it deems to be in the best interest of the state." 19 V.S.A. § 10(1). It is authorized to award contracts on behalf of municipalities, and in such cases, "[a]ll work shall be done to the satisfaction of and in accordance with the requirements of the [A]gency." *Id.* § 309(b).

This case began as a dispute over the bid specifications on a project to widen Dorset Street in South Burlington. Plaintiff alleges that the state's policy has cost it sales and profits because it sells only crushed gravel and has been prevented from seeking subcontracts on state highway projects in the Chittenden County area, where crushed stone is available. The Agency asserts that crushed stone is stronger than crushed gravel, and is therefore a preferable sub-base material. Claiming that the Agency's preference for stone over gravel "lacks any legitimate rational basis," plaintiff sought relief under the Civil Rights Act, 42 U.S.C. § 1983,[3] asserting that defendant's policy violates the Equal Protection Clause of the Fourteenth Amendment.

The superior court concluded that, because plaintiff was merely a potential supplier to prospective bidders, it had no standing under the Equal Protection Clause to challenge the Agency's policy. The court also determined that plaintiff had no legally protected property or liberty interest under the Due Process Clause. Plaintiff appeals the court's conclusion with respect to the Equal Protection Clause.

---

[3] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Defendant claims that plaintiff must exhaust administrative remedies before it can bring this action. The superior court did not rule on this argument, and in light of our disposition, we do not reach it.

█ We hold that Hinesburg Sand and Gravel lacks standing to assert an equal protection claim because its interest in competing on an equal basis with suppliers of crushed stone is neither a legally protected interest guaranteed by the Equal Protection Clause nor is it within the "zone of interests" protected by 42 U.S.C. § 1983. Furthermore, we hold that even if plaintiff had standing to bring this action, it has failed to state a cause of action under 42 U.S.C. § 1983.

In one of its most important decisions on standing, *Perkins v. Lukens Steel Co.*, 310 U.S. 113 (1940), the United States Supreme Court analyzed the type of interest plaintiff claims here and found it inadequate to confer standing. In *Lukens Steel*, the Court held that bidders under the Public Contracts Act of 1936 did not have standing to challenge the Secretary of Labor's interpretation of that statute because they had failed to establish a legal interest that was protected at common law, *id.* at 129, or that entitled them to relief under a relevant statute. *Id.* at 125-26. It further held that Congress, in enacting the procurement statute, did not intend to confer standing on bidders to bring such a challenge. *Id.* at 128. Combining doctrines of standing and judicial restraint, the Court reaffirmed "the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers." *Id.* at 127.

We emphasize that plaintiff in this case does not even have the interest of the plaintiff in *Lukens Steel*. This plaintiff is not a bidder or a prospective bidder. At best, plaintiff has a hope that if the bid specifications are changed, it *might* enter into a subcontract with a company that *might* obtain a primary contract from defendant in the future. Standing law has evolved since *Lukens Steel*, and that evolution has often liberalized standing requirements. It has not, however, liberalized them sufficiently to allow this claim.

█ The doctrine of standing is "'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Northeastern Florida Chapter of Associated Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656, 663 (1993) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Article III embodies various doctrines, including standing, mootness, ripeness and political question, that help define and limit the role of courts in a democratic society. *Allen v. Wright*, 468 U.S. 737, 750 (1984). One of the "passive virtues" of the standing doctrine is to promote judicial restraint by

limiting the occasions for judicial intervention into the political process. See generally A. Bickel, *The Least Dangerous Branch* 111-98 (2d ed. Yale Univ. Press 1986) (1962). Standing doctrine is fundamentally rooted in respect for the separation of powers of the independent branches of government. *Allen*, 468 U.S. at 752.

■ Standing embodies a core constitutional component and a prudential component of self-imposed judicial limits. *Id.* at 751. To establish standing in an action brought under the Equal Protection Clause, plaintiff must at an irreducible minimum demonstrate the following constitutional elements: (1) injury in fact, (2) causation, and (3) redressability. See, e.g., *Associated Gen. Contractors*, 508 U.S. at 663-64. The prudential elements of standing include the general prohibition on a litigant's raising another person's legal rights, the rule against adjudication of generalized grievances, and "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751; see also *Air Courier Conference of America v. American Postal Workers Union*, 498 U.S. 517, 524-25 (1991) (employees of Postal Service lacked standing because they were not within zone of interests of statutes creating national postal monopoly).

■ Injury in fact is defined as the "'invasion of a legally protected interest.'" *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211, 115 S. Ct. 2097, 2104 (1995) (quoting *Lujan*, 504 U.S. at 560). Determining whether plaintiff has suffered an invasion of a legally protected interest requires inquiry into the substance of plaintiff's claim. For example, in *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991), a state court action challenging research on monkeys was removed to federal court, where the defendants argued that the plaintiffs had no standing to bring the controversy before the court. The United States Supreme Court held that the plaintiffs had standing to challenge removal of their case from state to federal court, even though they might have lacked standing to have the federal courts adjudicate the merits of their claims. *Id.* at 76-78. "Standing does not refer simply to a party's capacity to appear in court. Rather, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents." *Id.* at 77; see also W. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 229 (1988) (standing "should be seen as a question of substantive law, answerable by reference to the statutory and constitutional provision whose protection is invoked").

■ The zone-of-interests test similarly requires us to examine the substance of plaintiff's claim. As originally formulated in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970), the test is "whether the interest sought to be protected by the complainant is arguably within the *zone of interests* to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 153 (emphasis added). Although the United States Supreme Court has not expressly applied the zone-of-interests test to an equal protection claim, its application is appropriate unless Congress has manifested a contrary intent. See *Bennett v. Spear*, 520 U.S. 154, —, 117 S. Ct. 1154, 1161 (1997) (zone-of-interests test is among standing requirements of general application); *Adams v. Watson*, 10 F.3d 915, 918 n.7 (1st Cir. 1993) (applying zone-of-interests test to Commerce Clause); *Peoples Gas, Light & Coke Co. v. United States Postal Serv.*, 658 F.2d 1182, 1195 n.10 (7th Cir. 1981) (duty to apply zone-of-interests test is nondiscretionary). We therefore turn to the substance of plaintiff's claim to resolve the issue of standing.

■ Plaintiff argues that the suppliers of crushed gravel have a right to compete on an equal footing with suppliers of crushed stone, and that the Agency of Transportation cannot prefer crushed stone over crushed gravel in its purchasing decisions. In essence, plaintiff urges that crushed gravel has a right under the Equal Protection Clause to be treated the same as crushed stone. We decline to recognize equal protection rights for gravel. Persons, not things, have equal protection rights.[4] Because plaintiff does not have a legally protected right to sell crushed gravel as if it were crushed stone, its claim fails to assert injury in fact.

■ This action is a routine procurement dispute dressed up as a civil rights claim. We doubt that the drafters of the Civil Rights Act, writing in the wake of the Civil War, intended to extend the benefits of 42 U.S.C. § 1983 to suppliers whose discrimination claim is based solely on the state's preference for one product over another. See generally *Monroe v. Pape*, 365 U.S. 167, 170-87 (1961) (history of Civil Rights Act). We therefore hold that this claim is not within the zone of interests of 42 U.S.C. § 1983.

---

[4] The Equal Protection Clause states: "No State shall . . . deny to any *person* within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added).

■ Our conclusion is reached with a firm belief that this is an area where we must defer to an independent and separate branch of government as explained in *Lukens Steel*. When acting as a market participant, the government should "enjoy[] the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Id.* at 127; see also *Reeves, Inc. v. Stake*, 447 U.S. 429, 439 (1980) (when acting in proprietary role, state should share private sector's freedom from legal restraints). Procurement laws are for the benefit of the state, not prospective bidders. See *Lukens Steel*, 310 U.S. at 126; *Sowell's Meats & Servs., Inc. v. McSwain*, 788 F.2d 226, 228 (4th Cir. 1986). Thus, "no one has a 'right' to sell to the government that which the government does not wish to buy." *Coyne-Delany Co. v. Capital Dev. Bd.*, 616 F.2d 341, 342 (7th Cir. 1980).

Because of the uniqueness of plaintiff's claim, we have been unable to find decisions on potential bidders' standing to bring equal protection claims that are exactly on point. We believe our analysis is consistent with the holding of the majority of courts that disappointed bidders lack standing to challenge bidding procedures under the Due Process Clause. See, e.g., *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 857-59 (10th Cir. 1991); *Sowell's Meats*, 788 F.2d at 228; *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 524 (8th Cir. 1985); *Grand Canyon Pipelines, Inc. v. City of Tempe*, 816 P.2d 247, 250-51 (Ariz. Ct. App. 1991); *Polyvend, Inc. v. Puckorius*, 395 N.E.2d 1376, 1380 (Ill. 1979), *appeal dismissed*, 444 U.S. 1062 (1980); *Rice v. Scott County Sch. Dist.*, 526 N.E.2d 1193, 1197 (Ind. Ct. App. 1988); *Teton Plumbing & Heating, Inc. v. Board of Trustees*, 763 P.2d 843, 850-51 (Wyo. 1988).

We also find persuasive the decisions holding that claims of potential suppliers are too speculative to confer standing. See *T & S Products, Inc. v. United States Postal Serv.*, 68 F.3d 510, 513 (D.C. Cir. 1995) (potential supplier of packaging products lacks standing to challenge Postal Service purchasing decision); *Energy Transp. Group, Inc. v. Maritime Admin.*, 956 F.2d 1206, 1215 (D.C. Cir. 1992) (potential competitive harm too speculative for injury in fact where bidder did not operate in geographic area specified in contract). We need not decide whether plaintiff, a potential subcontractor to a bidder, would have standing because its interest is even further removed than that of a potential supplier.

Plaintiff's answer to the weaknesses in its standing appears to be that the United States Supreme Court has recently given standing to

all equal protection claims in procurement disputes. It relies on two recent reverse discrimination decisions to support its standing argument: *Adarand*, 515 U.S. 200, 115 S. Ct. 2097, and *Associated Gen. Contractors*, 508 U.S. 656. In both of these cases, the Court held that white plaintiffs suffered harm to their opportunity to compete for federal contracts because of minority set-asides. The plaintiffs' injury in fact was their inability to compete on an equal footing *because of their race. Adarand*, 515 U.S. at 211, 115 S. Ct. at 2105; *Associated Gen. Contractors*, 508 U.S. at 667. The right to compete equally for government contracts, free of racial quotas, was specifically recognized in *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989) ("The [set-aside program] denies certain citizens the opportunity to compete for a fixed percentage of public contracts *based solely upon their race*.") (emphasis added). The Court did not hold that injury to opportunity to compete was a protected legal right in other types of cases. Nor did it hold that standing exists where the alleged discrimination involves the items to be purchased, rather than the racial status of the prospective government supplier. Instead, the Court's holdings were narrowly written to apply only to "cases of this kind." *Adarand*, 515 U.S. at 211, 115 S. Ct. at 2105.

It is a huge leap to hold that decisions that find standing to challenge race-based preferences, a traditional civil rights concern, provide standing to any potential government supplier who attempts to turn a procurement dispute into an equal protection challenge. Neither *Adarand* nor *Associated General Contractors* requires that step, and we decline to take it.

Although we affirm the dismissal based on lack of standing, we add that we do not believe the claim has merit under the Equal Protection Clause. Like the Tenth Circuit Court of Appeals, "[w]e are aware of no authority 'holding or suggesting that the exercise by a state of a consumer's choice between competing products denies the disappointed supplier equal protection of the laws.'" *Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs*, 811 F.2d 1371, 1385 (10th Cir. 1987) (quoting *Coyne-Delany*, 616 F.2d at 343); see also *Robert K. Bell Enters. v. Tulsa County Fairgrounds Trust Auth.*, 695 P.2d 513, 519 (Okla. 1985) (no equal protection claim where government granted better contract terms to plaintiff's competitor).

Even if plaintiff's gravel-versus-stone discrimination claim fit properly under the Fourteenth Amendment, we would hold that defendant has an important interest in making purchasing decisions without the second-guessing of the judicial branch. While the state is at liberty to

establish an administrative or judicial process to resolve procurement disputes, in the absence of such a process we do not believe the Constitution should be interpreted to create a right to sell to the government that which it does not want to buy. See *Coyne-Delany*, 616 F.2d at 342.

No one can claim that procurement decisions are perfect. More information and more analysis would no doubt lead to better product choices. In the real world, however, the transactional costs of acquiring and analyzing information may quickly overwhelm any gains in efficiency. The government has a legitimate interest in making procurement decisions free from continuous litigation by suppliers who claim to have a better product. The judiciary cannot become the "Consumer Reports" of the procurement business, enforcing product choices on a reluctant executive branch. We therefore defer to the discretion of the executive branch and hold that plaintiff neither has standing, nor an interest protected by the Fourteenth Amendment, to bring this action.

*Affirmed.*