John HAND and James Hand, Plaintiffs,

v.

CHRYSLER CORPORATION, Defendant.

No. 97:CV–327.

United States District Court,
D. Vermont.

Nov. 13, 1998.

Thomas F. Heilmann, Heilmann, Ekman & Associates, Burlington, VT, for John Hand and James Hand.

Christopher Denis Boy, Downs, Rachlin & Martin, P.C., Burlington, VT, Robert D. Cultice, Susan B. Hanmer, Goldstein & Manello, P.C., Boston, MA, for Chrysler Corp.

Robert D. Cultice, Susan B. Hanmer, Goldstein & Manello, P.C., Boston, MA, John R. Canney, III, Rutland, VT, for East Dorset Motor Co., Inc.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiffs John and James Hand ("Hands") bring this action for injunctive and declaratory relief against Defendant Chrysler Corporation ("Chrysler"). The case arose from the Hands' effort to purchase a Jeep/Eagle dealership from Leo's Motors, Inc. ("Leo's") which failed when Chrysler exercised its right of first refusal under a Sales and Service Agreement ("Agreement") with Leo's.

On June 17, 1998, Plaintiffs filed a Motion for Summary Judgment pursuant to Fed. R.Civ.P. 56(c). Defendants subsequently filed a Cross-motion for Summary Judgment on August 3, 1998. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Cross-motion for Summary Judgment is GRANTED.[1]

### I. *Findings of Fact*

Chrysler and Leo's were parties to a Jeep/Eagle Sales and Service Agreement which granted Leo's the right to purchase and sell Jeep/Eagle automobiles. Leo's sold Jeep/Eagle automobiles in Manchester, Vermont through the Agreement with Chrysler. Pursuant to the Agreement, Chrysler retained a right of first refusal in the event that Leo's decided to sell the dealership rights acquired through Chrysler. Paragraph 34 of the Agreement details Chrysler's right of first refusal.

"[Leo's] may at any time negotiate for the sale of its assets, and any of the owners of [Leo's] may at any time negotiate the sale of their ownership interests in [Leo's], with any purchaser on such terms as may be agreed upon by them and the prospective purchaser. Any such sale, however will not create any obligation of [Chrysler] to do business with any such purchaser ...

Notwithstanding the foregoing provision of this paragraph 34, even if the prospective purchaser of [Leo's] assets or owner-

---

**1.** Although the Court had indicated an intention to schedule oral argument, review of the motion and memoranda submitted by the parties has resulted in the Court's conclusion that oral argument is unnecessary.

ship interests in [Leo's] meets [Chrysler's] qualifications for appointment as a dealer, [Chrysler] may, at its discretion, offer to purchase [Leo's] assets or ownership interests in [Leo's] on the same terms as said qualified prospective purchaser. If [Chrysler] makes such an offer, [Leo's] shall sell the dealership assets to [Chrysler] on the aforementioned same terms. However, if [Chrysler] has not made such an offer within fifteen (15) business days after [Chrysler's] receipt of the aforementioned application and all necessary information, [Chrysler] shall be deemed to have declined to offer to purchase [Leo's] assets or ownership interest in [Leo's] . . ."

On or about June 4, 1997, Leo's decided to sell their rights in the dealership and entered into an Asset Purchase Agreement with the Hands. Pursuant to the Asset Purchase Agreement, the Hands were to purchase the automobile dealership in Vermont. The enforceability of that Asset Purchase Agreement between Leo's and the Hands was contingent upon the approval of Chrysler. Section 7 of the Asset Purchase Agreement expressly states that "Buyers' obligation to purchase the assets set forth in the Agreement are subject to the condition that Buyers obtain the approval of Chrysler to obtain a sales and service agreement with the Jeep/Eagle Division of Chrysler."

On or about June 8, 1997, Leo's notified Chrysler requesting to sell its assets to the Hands and included in the notification a copy of the Asset Purchase Agreement. On June 26, 1997, Chrysler received the completed application and supporting documentation from the Hands. By letter dated July 14, 1997, Chrysler informed Leo's that it was exercising its right of first refusal and that it had assigned its right to purchase Leo's' assets to Dorset Motor Company. On July 16, 1997, Leo's informed Chrysler that it consented to the assignment of Chrysler's right to purchase Leo's' assets on the terms and conditions of the Asset Purchase Agreement and, on October 14, 1997, sold its assets to Dorset Motor Company. Chrysler subsequently terminated its Dealer Agreement with Leo's and entered into a Sales and Service Agreement with Dorset Motor Company.

Plaintiffs contend that: (1) Chrysler failed to offer to purchase Leo's' assets and ownership interest in the dealership on the same terms and conditions pursuant to the Hand's agreement in violation of the Sales and Service Agreement between Chrysler and Leo's; and (2) under the Vermont Dealers' Act, (a) Chrysler failed to respond in writing to the request for consent to the sale or transfer of a franchise to a qualified buyer within 60 days of receipt of a written request, (b) Chrysler unreasonably withheld consent to Leo's' assets and interest in the dealership, and (c) Chrysler prevented Leo's from receiving fair and reasonable compensation for the value of the dealership. Consequently, the Hands argue that Chrysler essentially failed to properly exercise its right of first refusal and thus consented to the sale of the assets to the Hands.

Chrysler contends that the Hands do not have standing to bring either a common-law or statutory claim against them because the Hands were not a party to the Sales and Service Agreement and thus they did not have an established legally protected interest in the contract. Chrysler further argues that even if the Hands have standing to bring the Vermont Dealers' Act Claim, Chrysler did not violate the provisions of the Act.

## II. *Discussion*

### A. *Standard for Summary Judgment*

Summary Judgment is appropriate in cases where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute over a material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial. *Id.* at 249, 106 S.Ct. 2505 (quoting *First National Bank of Ariz. v. Cities Service Co.,* 391 U.S.

253, 288–289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The party opposing summary judgment may not rest on the its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In its review, this Court views all of the facts and all of the inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Id.* at 587, 106 S.Ct. 1348.

### B. *Vermont law applicable*

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and is thus required to apply Vermont law as to all substantive issues. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When the state supreme court has not interpreted a particular statute, it is the duty of this Court in a diversity action to anticipate how the state court would interpret the statute. *Deveny v. Rheem Mfg. Co.,* 319 F.2d 124, 129 (2d Cir.1963) (finding that a federal district court in a diversity case hearing an action based on injuries sustained in Vermont must look to Vermont law and rules of statutory interpretation.)

*See also Kessler v. Loftus,* 994 F.Supp. 240, 242 (D.Vt.1997); *Mainline Tractor & Equipment v. Nutrite Corp.,* 937 F.Supp. 1095, 1101 (D.Vt.1996).

### C. *Standing*

■ As a threshold matter, this Court must determine whether the Hands have standing. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998). Generally, in evaluating whether a party has standing to sue, the Court must focus on whether the plaintiff suffered an injury which the law was designed to protect. The elements of standing include the general prohibition on litigant's raising another person's legal rights, the rule against adjudication of generalized grievances, and "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Hinesburg Sand & Gravel Co., Inc. v. State of Vermont,* 166 Vt. 337, 341, 693 A.2d 1045, 1048 (1997) (citing *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

■ In their first claim, the Hands allege that Chrysler failed to offer to purchase Leo's' assets and ownership interest in the dealership on the same terms and conditions pursuant to the Hand's agreement with Leo's and thus violated the Sales and Service Agreement between Chrysler and Leo's. Although the Hands may have been injured by the loss of their expectations, they do not have a legally protected interest from which to base a claim against Chrysler. Chrysler expressly reserved their right of first refusal in their Sales and Service Agreement with Leo's. They exercised their right of first refusal and accordingly denied the Hands the opportunity to purchase the dealership. The only party that could have objected to Chrysler exercising their right of first refusal, Leo's, did not do so.

Under similar circumstances, the Supreme Court of Vermont recently held that a subcontractor with a hope of obtaining a contract with a company that might obtain a primary contract from the defendant in the future, lacked standing. *See Hinesburg,* 166 Vt. at 340, 693 A.2d 1045. Citing *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), the Court held that plaintiff had failed to establish a legally protected interest. "When acting as a market participant, the government should 'enjoy the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases.'" *Hinesburg,* 166 Vt. at 343, 693 A.2d 1045 (quoting *Perkins* 310 U.S. at 127, 60 S.Ct. 869).

Similarly, no one has a right to sell and service Chrysler's product, Jeep/Eagle automobiles. Chrysler has, as does the government under *Hinesburg,* the unrestricted power to determine those with whom it will deal. Here, Chrysler chose to deal with Leo's and later Dorset Motor Company and not the Hands. Consequently, the Hands do not have the legal right to object to Chrysler's decision to exercise its right of first refusal.

■ Similarly, the Hands do not have standing to bring their statutory claims under the Vermont Dealers Act. 9 V.S.A. § 4099. The issue of standing in this context is a matter of statutory construction. Essentially, the question is whether the provisions of the statute allegedly violated by the Defendant were designed to protect the Hands.

This Court must apply the same rules of statutory construction that the Supreme Court of Vermont would apply. *Travelers Ins. Co. v. 633 Third Assoc.,* 14 F.3d 114, 119 (2d Cir.1994) (federal district court must apply the same analysis that the Supreme Court of Vermont would apply.) If the meaning of the statute is plain this Court must enforce the statute according to its obvious terms. *Donoghue v. Smith,* 119 Vt. 259, 263, 126 A.2d 93 (1956). However, if the meaning of the statute is not clear this Court must ascertain and give effect to the intention of the legislature. *State v. Hull,* 143 Vt. 353, 354, 465 A.2d 1371 (1983).

Section 4099 of the Vermont Dealers' Act provides that "any consumer who is injured by a violation of this chapter, or any party to a franchise who is injured in his business or property by a violation of this chapter relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this chapter, may bring a civil action..." 9 V.S.A. § 4099. The Hands contend, as prospective purchasers, that they have standing either as consumers or as someone who has refused to accede to an arrangement which would be in violation of the Act. The plain language of § 4099 is not clear as to whether the Hands satisfy either of those categories. Consequently, the Court must look at § 4099 in conjunction with the Legislature's intent.

To determine the intent of the Legislature, we look both to the language and purpose of the entire statute. The Hands claim that Chrysler violated § 4097(10), (11), (12), and § 4096(6). Sections 4096(6) and 4097(12) clearly apply to "new motor vehicle dealers." A " 'new motor vehicle dealer' means any person engaged in the business of selling, offering to sell ... and who holds, or held at the time of a cause of action under this chapter accrued, a valid sales and service agreement, franchise or contract, granted by the manufacturer..." 9 V.S.A. § 4085(9). The Hands do not hold nor have they ever held a valid sales and service agreement with Chrysler.

Sections 4097(10) and (11) implicitly apply to 'new motor vehicle dealers.' The sections pertain to a franchisee's request for consent to sell its interest in the franchise. A request for consent to the sale, transfer, or exchange of the franchise to a qualified buyer involves an arrangement where the existing franchisee obtains permission from the franchiser. Consistent with the other sections in the Act, these sections provide protection for the existing franchisee in the event they decide to sell their interest in the franchise.

As evidenced by these provisions and others throughout the statute which mirror the same intent, the statute's focus is clearly on the relations between franchisers and franchisees. The scope and purpose of the Vermont statute is consistent with the majority of other states' dealership statutes.

In *Roberts v. General Motors Corporation,* 138 N.H. 532, 536, 643 A.2d 956, 958 (1994), under a similar factual background, the Supreme Court of New Hampshire held that the prospective buyer lacked standing to sue under the Dealership Act. The statute in *Roberts* conveyed standing upon "any person who is injured in his business or property by a violation of this chapter." RSA 357–C:12, II (1984). The court reasoned that although the standing provision of the statute seemingly included a broad array of potential plaintiffs, the provision must be read in conjunction with the statute as a whole. In light

of the clear intent of the statute as a whole to protect the investment and property interests of those already dealers, plaintiff was precluded from bringing a claim under the statute.

Similarly, the Supreme Court of Massachusetts held that a prospective franchisee, claiming the loss associated with the inability to obtain the franchise, did not have standing to sue the franchiser. *Beard Motors, Inc. v. Toyota Motor Distributors, Inc. et al.*, 395 Mass. 428, 480 N.E.2d 303 (1985). The court found that the Legislature's intent was "to protect motor vehicle franchisees and dealers from the type of injury to which they had been susceptible by virtue of the inequality of their bargaining power and that of their affiliated manufacturers and distributors." *Id.* at 306. As a result, the court concluded that plaintiff's injuries were not within the area of legislative concern that resulted in the enactment of the statute and therefore plaintiff did not have standing. *Id.*

In the instant case, the statute, read as a whole, involves arrangements between the manufacturer and a new motor vehicle dealer, not a prospective purchaser. The provisions that Chrysler allegedly violated all support the contention that the statute's purpose is to protect a new motor vehicle dealer with a sales and service agreement from unreasonable and unfair conduct by the manufacturer. The Hands were not a party to such an agreement and thus cannot be deemed to have refused to accede to such an arrangement. Thus, the only avenue for Plaintiffs is for them to establish themselves as consumers.

As Plaintiffs point out, the term "consumer" is not defined in the Vermont Dealers' Act. Vermont's Consumer Fraud Act, which falls under the same title as the Dealers' Act, defines "consumer" in relevant part as: "Any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services *not for resale* in the ordinary course of his or her trade or business ..." (emphasis added) Although Plaintiffs argue that many items such as furniture and fixtures are not for resale, the arrangement between a manufacturer and a dealer primarily involves the right to sell and service the

manufacturers' automobiles. The alleged injury to the Plaintiffs arose from the lost opportunity to sell and service Jeep/Eagle automobiles and not from the loss of furniture or fixtures located in the dealership. Hence, in light of their claim Plaintiffs also fail to establish standing as "consumers."

**D.** *Chrysler complied with the provisions of the Vermont Dealers' Act and the terms of their Sales and Service Agreement with Leo's.*

■ Furthermore, the Court finds that even if Plaintiffs had standing to bring this claim, judgment would still be entered in favor of Chrysler. Chrysler did not violate the provisions of the Vermont Dealers Act nor did they fail to properly exercise their right of first refusal.

The Hands contend that Chrysler violated § 4097(10), (11), (12) and § 4096(6) of the Act. The relevant sections of § 4097 state that it shall be a violation of this chapter for any manufacturer: (10) to unreasonably withhold consent to the sale, transfer, or exchange of the franchise to a qualified buyer capable of being licensed as a new motor vehicle dealer in this state; (11) to fail to respond in writing to a request for consent as specified in subdivision (10) of this section within 60 days of receipt of a written request on the forms ... such failure to respond shall be deemed to be consent to the request; and (12) to unfairly prevent a new motor vehicle dealer from receiving fair and reasonable compensation for the value of the new motor vehicle dealership.

The Hands' main contention is that Chrysler failed to respond in writing within 60 days thus consenting to the request. The request for consent discussed in this section is between Chrysler and Leo's, the parties in the Sales and Service Agreement. Leo's is requesting consent from Chrysler to sell its interest to a third party. Thus, any response to the request for consent would be directed to Leo's and not the prospective purchaser. In fact, Chrysler responded to Leo's well within the 60 days as required by the statute.

In addition, Chrysler did not unreasonably withhold consent to the sale, transfer, or

exchange of Leo's' assets and interest in the dealership. In fact, Leo's sold its assets to Dorset Motor Company. Lastly, Chrysler did not prevent Leo's from receiving fair and reasonable compensation for the value of the dealership. Leo's received the same price from Dorset Motor Company that it would have received from Plaintiffs.

Chrysler also properly exercised its right of first refusal and had no obligation to honor the terms of the Asset Purchase Agreement. The validity of that Agreement was contingent on the approval of Chrysler. The Hands assumed the risk and for whatever reason, the Hands were not approved by Chrysler to obtain a sales and service agreement. Consequently, any claims asserted by the Hands that rely on the terms of the Agreement are groundless.

III. *Conclusion*

Plaintiffs' Motion for Summary Judgment (paper 34) is DENIED. Defendant's Cross Motion for Summary Judgment (paper 37) is GRANTED.