STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

|   | { |   |
|---|---|---|
| In re UVM – Certificate of Appropriateness { | | Docket No. 90-7-12 Vtec |
| (Appeal of Porter) | { | |
|   | { | |

## Decision on Motion to Alter

Appellant Pike Porter and interested person Chris Flinn, both appearing pro se, separately move to alter or amend the Court's February 26, 2013 decision on multiple motions and cross motions for summary judgment. This matter is an appeal of the decision of the City of Burlington (City) Development Review Board (DRB) to grant Applicant University of Vermont (UVM) a certificate of appropriateness under the City Development Ordinance (CDO) for UVM's plans to improve an existing athletic field with open air bleachers, lights, a press box, bathrooms, locker rooms, a concession stand, paving, and landscaping (the Project).

## I.     The Legal Standard for Reconsideration

V.R.C.P. 54(b) provides that in the absence of a final judgment by this Court, any interlocutory decision adjudicating fewer than all of the claims of fewer than all the parties in an action "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." In addressing a motion to alter made pursuant to Rule 54(b), we apply the legal standard applicable to ruling on a Rule 59(e) motion to alter or amend a final judgment. In re Bennington Wal-Mart Demolition/Const. Permit, No. 158-10-11 Vtec, slip op. at 4 (Vt. Sup. Ct. Envtl. Div. Aug. 17, 2012) (Walsh, J.). We have identified four principal reasons for granting such a motion: (1) to correct manifest errors of law or fact; (2) to allow a party to provide "newly discovered or previously unavailable evidence"; (3) to "prevent manifest injustice"; and (4) to respond to an "intervening change in the controlling law." Lathrop Ltd. P'ship I, Nos. 122-7-04 Vtec, 210-9-08 Vtec, and 136-8-10 Vtec, slip op. at 10–11 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2011) (Durkin, J.) (citing 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).

The grant of a motion to reconsider is "an 'extraordinary' remedy that should be used 'sparingly'." In re Appeal of Berezniak, No. 171-9-03 Vtec, slip op. at 3–4 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 2810.1). The disposition of a motion to reconsider "is committed to the court's sound discretion," and its narrow function is to correct

"the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enterprises, Inc., 164 Vt. 582, 588 (1996) (citing In re Kostenblatt 161 Vt. 292, 302 (1994)). See also Bennington Wal-Mart, No. 158-10-11 Vtec, slip op. at 4. Mere disagreement with the decision is not grounds for reconsideration. In re Boutin PRD Amendment, No. 93-4-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 18, 2007) (Wright, J.).

## II.    Mr. Flinn's Motion for Reconsideration.

In his motion for reconsideration, Mr. Flinn reiterates his belief that the Project constitutes a "Recreational Facility – Outdoor Commercial," which requires conditional use review in the Institutional Zoning District in which the Project is located, in contrast to a "Recreational Facility – Outdoor" use, which does not require such review. In our February 26, 2013 decision, we determined that the distinction was not dispositive, because regardless of the categorization the Project might have if it were not part of the University, the Project constitutes a post-secondary school use. The Project lies within the ICC-UVMS overlay district, where post-secondary school uses "shall be treated as permitted uses." See CDO § 4.5.2(f)(7). Nothing in Mr. Flinn's filing convinces us to alter our conclusion regarding the import of the distinction between Outdoor and Outdoor Commercial facilities.

Mr. Flinn further argues that all post-secondary uses in the Institutional Zoning District, including those within the ICC-UVMS overlay district, require conditional use review. For this proposition, he points to the Use Table in the CDO's Appendix A. The table lists the City's base districts and their allowable uses, but does not include overlay zones, which appear in a separate section of the CDO along with their overlay-specific allowable uses. Under Appendix A's base district table, post-secondary school uses are conditional uses in the Institutional Zoning District. The Project lies both within the Institutional Zoning District and within the ICC-UVMS overlay.

Mr. Flinn argues that the more specific language of the ICC-UVMS overlay district should not apply, as he reads CDO § 4.3.2[1] to suggest that overlay districts are necessarily subordinate to the base zones they cover. This contention is incorrect. Overlay districts are

---

[1] CDO § 4.3.2 lists the seven types of overlay districts in the City and provides a brief description of the concept of overlay districts generally, stating that they are "overlaid upon [the City's base districts], and the land so encumbered may be used and altered in a manner permitted in the underlying district only if and to the extent such use or alteration is permitted in the applicable overlay district."

often more restrictive than the base layers they cover, but they can be more permissive as well.[2] The CDO's drafters specifically provided that the institutional core campus overlay districts are designed to "allow[] increased development than would typically be found in the underlying districts. Development is intended to be more intense than the surrounding neighborhoods with higher lot coverage and larger buildings." CDO § 4.5.2. As we discern no manifest error of law or other grounds for modifying our conclusion as to the necessity of conditional use review, we **DENY** Mr. Flinn's motion to amend or alter our decision.

### III. <u>Mr. Porter's Motion for Reconsideration Regarding Major Impact Review.</u>

Mr. Porter's motion asks us to "reconsider the reviewing Question 2 to determine if the Project is within [] 1,000 feet and 12-months of other projects and if such proximity triggers major impact review." (Mr. Porter's Mot. for Reconsideration at 1, filed Mar. 5, 2013.) The CDO requires major impact review under eight enumerated circumstances. CDO § 3.5.2(b). The last of the enumerated circumstances is "[m]ultiple projects by the same applicant or responsible party within any consecutive twelve (12) month period on the same property or on a property within 1000 feet of the subject property that in the aggregate equal or exceed [circumstances 1—7][3]." CDO § 3.5.2(b)(8) (emphasis added). Mr. Porter provided no evidence that UVM has undertaken multiple projects on the same property or on a property within 1000 feet of the subject property within any consecutive twelve month period, much less has he offered any evidence suggesting that any aggregated developments equal or exceed the other criteria in CDO § 3.5.2(b). Mr. Porter nonetheless argues that we should address the issue at trial.

---

[2] Indeed, the City's seven overlays include both more restrictive and more permissive overlays: Design Review, Institutional Core Campus (five individual districts), RH Density Bonus, Natural Resource Protection (four individual districts), RL Larger Lot, Mouth of the River, and Centennial Woods. See CDO § 4.3.2 and subsequent descriptions of each overlay in CDO § 4.5.

[3] Circumstances 1-7 are:
1. The construction of five (5) or more dwelling units or the creation through adaptive reuse, substantial rehabilitation or conversion of ten (10) or more dwelling units;
2. The creation of five (5) or more lots;
3. The construction or substantial rehabilitation of fifteen thousand (15,000) s.f. or more of gross floor area of non-residential development;
4. Land disturbance involving one acre or more;
5. Site improvements involving fifty (50) or more parking spaces;
6. Site improvements and land development on parcels that contain designated wetlands as regulated pursuant to Article 4, or natural areas of state or local significance as identified in the municipal development plan;
7. Site improvements and land development on parcels seeking a waiver under Article 5, Part 4, Sec. 5.4.9 – Brownfields.

In this case, we do not reach the question of whether UVM has undertaken multiple projects because, as explained in our February 26, 2013 decision, the CDO specifically exempts from major impact review "[p]rojects that do not result in a change of use or increased parking demand as determined by the administrative officer." CDO § 3.5.3(d). Both before and after the proposed renovations, the Project site remains a post-secondary school use; therefore there is no change in use. Further, Mr. Porter has not established a dispute of material fact regarding whether the Project, which provides for parking in UVM's existing parking facilities, would result in increased parking demand. We see no manifest error of law or other grounds for modifying our decision to grant UVM summary judgment under V.R.C.P 56 on the issue of major impact review, thus, we **DENY** Mr. Porter's motion to amend or alter our decision regarding Question 2.

### IV. Mr. Porter's Motion for Reconsideration Regarding Lack of Standing to Bring Claims of a Notice Violation on Behalf of Third Parties.

Mr. Porter asks us to reconsider our determination to dismiss his Question 9 for lack of standing to raise the question of whether "the public [was] properly warned about the project" in accordance with notice-related sections of the CDO as well as with the notice requirements of 24 V.S.A. § 4464. Mr. Porter was one of 240 landowners that UVM notified of the hearing, and Mr. Porter participated in the hearing. Thus, he does not seek to assert his own legal rights regarding the alleged defect in notice, but rather to assert the rights of other individuals or entities not involved in this case.

Well-established principles of standing prevent a party from bringing claims on behalf of a third party. The Vermont Supreme Court has adopted the federal constitutional and prudential components of the standing doctrine enunciated by the United States Supreme Court. See Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341 (1997). The prudential component includes, among other things, "the general prohibition on a litigant's raising another person's legal rights . . . ." Id. Mr. Porter misinterprets Warth v. Seldin, 422 U.S. 490 (1975) and Sierra Club v. Morton, 405 U.S. 727 (1972) as supporting his contention that because he has standing to bring his own claims on substantive issues such as whether light from the athletic facility may reach his particular residence, he may serve as a "private attorney general" to bring notice-based claims on behalf of third parties not involved in the appeal. Although federal standing law contains certain narrow and well-delineated exceptions on the prohibition against third party standing, we see nothing to suggest that they would apply to this situation.

4

Moreover, it is far from clear that Vermont had adopted federal standing exceptions for persons seeking to enforce rights created by state and municipal laws, particularly those governing land use. To the contrary, specific statutory requirements establish who may appeal an act of an appropriate municipal panel. See 24 V.S.A. § 4465. Accordingly, we **DENY** Mr. Porter's motion to amend our decision to dismiss his Question 9.

Done at Burlington, Vermont this 19th day of March, 2013.

Thomas G. Walsh,
Environmental Judge