STATE OF VERMONT

SUPERIOR COURT
Washington Unit

CIVIL DIVISION

2016 DEC -6 P 4: 45    Docket No. 8-1-16 Wncv

JEFFREY-MICHAEL BRANDT
    Plaintiff

v.

LISA MENARD, Commissioner,
Vermont Department of Corrections
    Defendant

## DECISION
### The State's Motion to Dismiss

Mr. Jeffrey-Michael Brandt is an inmate in the custody of the Defendant Vermont Department of Corrections who is currently held in an out of state facility in Michigan. He seeks Rule 75 review of a practice that he alleges occurs in that facility involving certain aspects of the disciplinary process. At the Department of Corrections level, his grievance was denied for lack of any "grievable event" on the grounds that there was no underlying disciplinary action at issue. Mr. Brandt then filed this case.

The State has filed a motion to dismiss for several reasons but the simplest reason that dismissal is appropriate is that Mr. Brandt lacks standing to raise the issue that he wishes the court to address. The reason is that he is seeking review of a practice in general rather than as a result of any specific disciplinary action taken against him. At this time, he has not claimed a specific consequence to himself as a result of the practice at issue. In order to seek court relief, he must be able to claim that he has been harmed as a result of a specific event; unless he can show specific application to himself, he does not have a basis for seeking court review. The legal term is that he must show that he has "standing" to file a case based on a specific occurrence. Since he is not complaining about a specific occurrence, he does not have standing, and this case must be dismissed.

The DOC's inmate discipline directive has both formal and informal dispute resolution processes. The informal process is available only for minor violations and only when a decision is made to use it. See Directive 410.01, Procedural Guidelines § 3 (the informal process). When those conditions are satisfied, the ensuing process is as follows. When an inmate is believed to be guilty of a minor violation, a supervisor and the inmate will discuss what the sanction should be. If they agree, that is the sanction. If they do not agree, the supervisor imposes the sanction that the supervisor believes should be imposed, without the inmate's assent or a hearing. The inmate then may choose to accept that sanction or reject it. A rejection must occur at the time the sanction is imposed. If the sanction is rejected, a formal DR may be issued *based on the underlying conduct* and it may be charged as a major DR as appropriate. Then the formal process is followed.

1

One form of major violation is for failing "to carry out any disciplinary sanction order (whether from informal or formal resolution)." It makes sense that this would be available if an inmate agreed to a sanction for a minor infraction, or did not object to such a sanction, following the informal discipline process and then afterwards refused to comply with the terms of the sanction.

Mr. Brandt claims that, despite the above, there is a practice in his facility as follows. The informal process for a minor violation is begun. There is no agreement on sanction—there may be no agreement that there was a violation at all. The supervisor imposes a sanction without the inmate's assent. The inmate rejects the sanction in a timely manner and requests a DR and formal hearing. The DR that is issued is for not carrying out the disciplinary sanction that was informally imposed rather than for the underlying alleged conduct. In other words, the inmate's ability to reject informal resolution and have a hearing on a DR based on the underlying events is totally illusory.

Mr. Brandt alleges that the corrections officers in his facility were not trained properly to do what the directive says and, separately, that they were expressly instructed to ignore what the directive says. The State focuses on these aspects of the allegations, but Mr. Brandt's claim is not about training or who said what to whom. It is about a disciplinary practice that Mr. Brandt claims clearly violates the DOC's directive.

The threshold problem with Mr. Brandt's claim is that, for purposes of this case, it is purely academic. Any decision of the court would be based on generalities and even if it were in favor of Mr. Brandt's position, it would not provide him with any specific relief. In short, he lacks standing to bring this type of claim, at least at this time, when he has no specific and recent set of facts showing that the practice affected him. "Standing doctrine is fundamentally rooted in respect for the separation of powers of the independent branches of government." *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 341 (1997) (noting at 340–41 that "[o]ne of the 'passive virtues' of the standing doctrine is to promote judicial restraint by limiting the occasions for judicial intervention into the political process"); accord *Parker v. Town of Milton*, 169 Vt. 74, 77 (1998). The courts do not interfere with the manner in which the executive branch carries out its responsibilities unless and until there is a specific case that a person claims adversely affects him or her.

The contemporary federal doctrine was described in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), as follows:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will

be "redressed by a favorable decision."

*Id.* at 560–61 (citations omitted). These federal standing requirements have been adopted in Vermont. *Parker*, 169 Vt. at 77–78 (explaining that in *Hinesburg Sand & Gravel*, the Vermont Supreme Court adopted the standing test articulated in *Lujan*).

Mr. Brandt lacks standing in this case because he has not shown that he has received a recent DR as a result of this practice. No actual or imminent disciplinary action is at issue. Mr. Brandt asserts that this practice was applied to him at some point in the past, but any such disciplinary action is not part of the grievance exhausted in relation to this case now. There is no specific controversy involving Mr. Brandt at this time that gives him standing to ask the court to determine the legality of the practice.

Thus the court does not address the merit of the practice at all. Because Mr. Brandt does not have a basis for standing, the case must be dismissed.

## ORDER

For the foregoing reasons, the State's motion to dismiss is *granted.*

Dated at Montpelier, Vermont this _6ᵗʰ_ day of December 2016.

Mary Miles Teachout
Superior Judge

3