STATE OF VERMONT
ENVIRONMENTAL COURT

}
In re Petition of the Intervale Center, Inc.,   }         Docket No. 89-5-08 Vtec
    and Half Pint Farm (Hoop House)   }
}

## Decision on Motion to Dismiss

This matter arises out of an April 2008 decision by the Vermont Agency of Agriculture, Food, and Markets ("Agency of Agriculture") on a petition filed by the Intervale Center, Inc., and Spencer and Mara Welton, the operators of Half Pint Farm (collectively, "Intervale"). The petition sought a determination that building a hoop house within the City of Burlington ("City") floodway would comply with the Vermont Accepted Agricultural Practice Rules ("AAPs"). The Agency of Agriculture's decision concluded that the hoop house would comply with the AAPs, if certain conditions were met. Intervale brought this appeal to challenge some of those conditions.

Appellant Intervale is represented by Brian S. Dunkiel, Esq., with assistance on the briefings from Sara Kelly, a law clerk; Appellee Agency of Agriculture is represented by Assistant Attorney General Diane E. Zamos, Esq.; and the City is represented by Kimberlee J. Sturtevant, Esq.

In the initial pretrial telephone conference on March 19, 2008, the parties indicated that there was uncertainty as to the whether the Environmental Court has jurisdiction over this dispute. The Court then issued a Scheduling Order on May 21, 2008, directing Intervale to file a statement of the jurisdictional foundation for hearing this matter in the Environmental Court. Intervale filed such a statement, and the Agency of Agriculture responded by filing a motion to dismiss for lack of jurisdiction. Intervale replied, and the Agency of Agriculture filed a sur-reply. Although the City originally stated in the March 19, 2008 telephone conference that it took no position on the jurisdictional issue in this case, the City later stated in an August 4, 2008 letter that it supports Intervale's position that the Environmental Court is the proper forum to review this matter. At any rate, the City has chosen not to file a brief on the jurisdictional or other legal issues raised in this appeal. Our ruling today addresses the Agency of Agriculture's motion to dismiss for lack of jurisdiction.

## Factual Background

For the sole purpose of putting the pending motion in context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1.      Intervale is a not-for-profit corporation that aims to help farmers develop and maintain sustainable farming practices and bring local food to the community. Intervale currently leases farmland to Spencer and Mara Welton, who operate Half Pint Farm, a small-scale vegetable farm in the City.

2.      A hoop house is similar to a greenhouse. It is a framed, floorless enclosure with removable polyethylene end walls and a polyethylene skirt that hangs loosely to the ground on both side walls. The skirt can be pushed or rolled up to create ventilation. Hoop houses, like greenhouses, allow for an extended growing season by protecting crops from the less favorable elements of the non-summer months. Hoop houses also provide a number of other benefits to farmers.

3.      On November 20, 2007, Intervale filed a form titled "Non-Applicability of Zoning Permit Requirements" with the City Department of Planning and Zoning. The form proposed the construction of "three agricultural 'hoop houses'" and noted that these would be agricultural structures exempt from municipal zoning under 24 V.S.A. § 4413(d).[1] The City reviewed and approved the form on that same day.

4.      On November 28, 2007, Intervale faxed a letter to the Agency of Agriculture requesting the Agency to state its position on the placement of hoop houses on Intervale farms.[2]

5.      On December 7, 2007, the Agency of Agriculture responded to Intervale's request by letter, in which the Agency noted that any farm structures at Intervale must comply with the AAPs. The Agency of Agriculture also noted in its December 7 letter its conclusion that because the proposed hoop houses would be installed in a floodway, their installation would violate § 4.07(a) of the AAPs.[3]

---

[1] Although the form cites to all of 24 V.S.A. § 4413, it is clear from the context that Intervale was referring to subsection (d), which states that a "bylaw under this chapter shall not regulate accepted agricultural . . . practices, including the construction of farm structures, as those practices are defined by the secretary of agriculture, food and markets . . . under subsections 1021(f) and 1259(f) of Title 10 and section 4810 of Title 6."

[2] This letter has not been supplied to the Court, but it is referenced in the December 7, 2007 letter from the Agency of Agriculture.

[3] AAPs § 4.07(a) states the following:
> In addition to the requirements of Section 4.02(a), manure, fertilizer, pesticide storage structures, and farm structures shall not be constructed within a floodway area as presented on National Flood

6.      On February 12, 2008, Intervale filed a petition ("Petition") with the Agency of Agriculture requesting "authorization . . . to construct a hoop house." (Pet. at 1.) Intervale stated that it viewed the December 7, 2007 letter as "an informal opinion from the Agency," and Intervale expressed its wish that the Agency of Agriculture would "reconsider [its] position" and authorize construction of a hoop house. (Id.) The Petition also noted that there is "considerable confusion concerning the regulatory treatment of all farm structures in the Intervale" and asked the Agency of Agriculture to clear up this confusion. (Id. at 11.)

7.      Intervale's Petition reflects an intention to build only one hoop house. (Id. at 1.) In particular, the proposal is for a three-season 303-foot by 75-foot hoop house at the Half Pint Farm facilities. (Id. at 4.)

8.      Intervale's proposed hoop house is located within the floodway of the Winooski River, as delineated on the National Flood Insurance Maps. (Id. at 1.)

9.      On February 22, 2008, Assistant Attorney General Michael O. Duane sent a letter to Attorney Dunkiel, acknowledging that the Agency of Agriculture had received Intervale's Petition for "a declaratory-type ruling" on this issue.

10.     In April 2008, the Agency of Agriculture issued a decision ("Decision") that concluded that a hoop house installed at the Intervale facilities would comply with the AAPs, if the following conditions were met:

    a.  The hoop [house] shall be oriented parallel to the flood flow of the Winooski River to minimize any obstruction of flood flow and to minimize any downstream damage in the event of a flood[;]

    b.  The hoop house skirt would not be secured to the posts or the ground, and "ends" of the hoop house, which will be perpendicular to the river, shall remain open to allow water to flow through;

    c.  No tables, benches, racks or trays will be erected or used in the hoop house;

    d.  No fertilizers, manures or other agricultural inputs or equipment will be stored in the hoop house;

    e.  As the Intervale is the farmland owner the cumulative effect of any additional hoop houses proposed to be built at the Intervale shall be determined by the Agency with regard to the impacts on flood stages and flood damages under

---

Insurance Maps on file with Town Clerks or within a Fluvial Erosion Hazard Zone as designated by municipal ordinance. Such structures may be constructed outside this area yet within the 100-year floodplain when adequately protected from inundation and floodwater damage. Fences through which floodwater may flow are not structures which represent an encroachment in a floodway area.

20-010-008 Vt. Code R. § 4.07(a), available at http://www.vermontagriculture.com/ARMES/awq/AAP.html.

3

NFIP [National Flood Insurance Program] standards. Such consideration may require the completion of a no-rise certification performed in accordance with standard engineering practices as approved by FEMA under the NFIP.

    f.   Additional petitions from the Intervale farm or its lessees regarding proposed farm structures to be built in the mapped floodway will not be considered until the effect of existing farm structures on flood stages and flood damages built on the Intervale farmland prior to 2006, and which are subject to Burlington City zoning bylaws, has been resolved to the satisfaction of the Agency, the Vermont Department of Environmental Conservation, and FEMA.

Decision at ¶ 15.

11.    On May 8, 2008, Intervale filed an appeal with this Court to challenge the imposition of Conditions (a), (b), (e), and (f).

12.    On May 12, 2008, Intervale filed an appeal with the Vermont Supreme Court, presenting the same legal issues. In that appeal, Intervale noted its belief that the Environmental Court was the proper place for these issues to be litigated, but acknowledged that opinions differed on the proper judicial forum.

13.    On December 2, 2008, Intervale informed this Court that it had already completed construction of the hoop house at issue in this appeal. Intervale noted that it constructed the hoop house in conformance with the applicable conditions of the Agency of Agriculture's Decision. Intervale also stated that in its view, the construction of the hoop house did not make this appeal moot, since some of the conditions in the Agency of Agriculture's Decision apply beyond the construction phase of the hoop house.

## Discussion

Before we can address the issues presented in this appeal, we must determine whether this Court has jurisdiction to hear this matter. Intervale believes that jurisdiction lies with this Court, although Intervale has also filed an appeal in the Vermont Supreme Court, due to the disparate viewpoints on where jurisdiction lies. The Agency of Agriculture, on the other hand, believes that the only proper forum is the superior court.

Regardless of which court is the proper forum for this appeal, this case presents another jurisdictional hurdle for Intervale—namely, whether any live case or controversy currently exists. The U.S. Supreme Court has noted that "there is no mandatory 'sequencing of jurisdictional issues.'" Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)). Thus, we need not

4

first determine whether this Court is the proper forum for this appeal before we make any other determination as to our subject matter jurisdiction over this case. See id. Here we find that we can determine subject matter jurisdiction through an analysis of both the mootness and ripeness doctrines.

The judicial branch is confined to the "adjudication of actual disputes." Parker v. Town of Milton, 169 Vt. 74, 77 (1998). It is true that state agencies are free to render advisory opinions in certain situations, and those opinions often serve a proper role. The constitutional separation of powers does not prevent agencies from addressing issues that fall short of an actual case or controversy. Courts, on the other hand, are constitutionally prohibited from rendering advisory opinions. In re Opinion of the Justices, 115 Vt. 524, 529 (1949). This is true no matter how important the determination of the question may be. Chittenden S. Educ. Ass'n, Hinesburg Unit v. Hinesburg Sch. Dist., 147 Vt. 286, 297 (1986).

To prevent the issuance of advisory opinions, courts can only rule on an appeal if it presents a live case or controversy. Parker, 169 Vt. at 77. Our Supreme Court has noted that the constitutional case-or-controversy requirement of "Article III embodies various doctrines, including standing, mootness, ripeness and political question, that help define and limit the role of courts in a democratic society." Hinesburg Sand & Gravel Co. v. State of Vt., 166 Vt. 337, 340 (1997).

Regardless of whether Intervale might have presented a live case or controversy when it first filed its appeal, our Supreme Court has noted that all courts have an on-going constitutional obligation to assure that "there be an actual controversy in existence at all stages of review, not merely at the time the plaintiff originally filed the complaint." Doria v. Univ. of Vt., 156 Vt. 114, 117 (1991) (emphasis added) (citing Winton v. Johnson & Dix Fuel Corp., 147 Vt. 236, 239 (1986)). It is in this light that we must evaluate whether Intervale's appellate claims can go forward before this Court.

In addition to other jurisdictional constraints, this Court cannot address issues that fall outside the Statement of Questions, since those issues have not been properly preserved for our review in this appeal. See Vill. of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993). Of the six conditions imposed by the Agency of Agriculture's Decision, Intervale's Statement of Questions only challenges four of those conditions—namely, Conditions (a), (b), (e), and (f), which are raised by Intervale's Questions 1, 2, 3, and 4, respectively.

If none of the four challenged conditions currently creates a live case or controversy, then this Court does not have jurisdiction to hear this appeal. See Doria, 156 Vt. at 117. To determine whether a live case or controversy exists here, we must evaluate these conditions in light of the mootness and ripeness doctrines that constrain the jurisdiction of courts. See Hinesburg Sand & Gravel Co., 166 Vt. at 340. Our analysis of these doctrines leads us to conclude that this Court is without jurisdiction to hear this appeal.

## A.     Mootness

We find that the first challenged condition—Condition (a)—is moot now that Intervale has built its proposed hoop house. "The mootness doctrine derives its force from the Vermont Constitution, which, like its federal counterpart, limits the authority of the courts to the determination of actual, live controversies between adverse litigants." Holton v. Dep't of Employment & Training, 2005 VT 42, ¶ 14, 178 Vt. 147. The Vermont Supreme Court has noted on numerous occasions that "a case generally becomes moot when there is no longer a live controversy, or the parties involved lack a 'legally cognizable interest in the outcome of the case.'" State v. Rooney, 2008 VT 102, ¶ 9 (mem.) (citing In re S.N., 2007 VT 47, ¶ 5, 181 Vt. 641 (mem.)). Condition (a) is entirely concerned with the orientation of the hoop house; Intervale has already built the hoop house in conformance with that specific orientation. Our Supreme Court has noted that "a change in facts or circumstances can render a case moot if this Court can 'no longer grant effective relief.'" Houston v. Town of Waitsfield, 2007 VT 135, ¶ 5 (quoting In re Moriarty, 156 Vt. 160, 163 (1991)). This Court can no longer grant effective relief here, now that Intervale has already constructed the hoop house and done so in conformance with Condition (a).

We recognize that courts must be cautious before finding issues moot simply because a party complies with an order while an appeal is pending. According to our Supreme Court, in general, "[c]ompliance with a judgment pending appeal does not make a case moot." In re Barlow, 160 Vt. 513, 518 (1993). Nevertheless, there is an exception to this rule whenever "'it is not possible to take any effective action to undo the results of compliance.'" Id. at 519 (citing 13A Wright, Miller, & Cooper, Federal Practice and Procedure § 3533.2, at 247 (2d ed. 1984)). We do not have before us any facts upon which we could conclude that Intervale can or wishes to re-orientate the already-built hoop house. Thus, even if Intervale were to prevail on this legal issue, neither this Court nor any other court could grant proper relief to Intervale. We therefore

6

conclude that the legal issue raised in Intervale's Question 1 is moot, and we are without jurisdiction to decide it. See id.; see also, e.g., Chase v. State, 2008 VT 107, ¶ 12.

Although Intervale might argue that this appeal falls under the "narrow exception to the mootness doctrine for situations capable of repetition yet evading review," In re S.N., 2007 VT 47, ¶ 7, we are without a basis to make such a finding here. Our Supreme Court has noted that there are two requirements to this exception:

> [T]he challenged action must be too short in duration to be fully litigated prior to its cessation or expiration, and there must be a reasonable expectation that the same party will be subject to the same action again. A "reasonable expectation" is more than a theoretical possibility that the party could be subject to the same action again; the party must show a "demonstrated probability."

Chase, 2008 VT 107, ¶ 16 (citations omitted) (citing In re Green Mountain Power Corp., 148 Vt. 333, 335 (1987)).

To find that this exception does not apply here, we need only address the second requirement—the requirement that there be a reasonable expectation that Intervale will again be subject to the same action. See id. Intervale has not shown a "demonstrated probability" that it intends to build additional hoop houses or other farm structures in floodways. Id. As discussed below in our ripeness analysis of Conditions (e) and (f), it would be speculation to assume that additional farm structures will be built. It would also be speculation—and certainly not a "demonstrated probability"—to assume that the Agency of Agriculture would impose conditions upon future petitions by Intervale, given that today's ruling by this Court notes below that we are unaware of the legal authority for the Agency to act in this way. It is therefore not a "demonstrated probability" that Intervale will again be subject to the same situation that gave rise to this appeal. We thus conclude that the exception to the mootness doctrine is inapplicable. Id.

For all of these reasons, we hold that the appeal of Condition (a) is moot, and we therefore **DISMISS** Intervale's Question 1 from this appeal.

The remaining challenged conditions—Conditions (b), (e), and (f)—appear to go beyond the initial building of the hoop house. We can therefore not consider these conditions moot simply because the hoop house has already been built. Nevertheless, that does not end our inquiry into the justiciability of these issues. Rather, before we can assert jurisdiction over these issues, we must determine whether they are currently ripe for review. See, e.g., Hinesburg Sand & Gravel Co., 166 Vt. at 340.

**B.    Ripeness**

In addition to constraints placed upon this Court by the mootness doctrine, we are also without jurisdiction to hear cases that are not yet ripe for review. Id. The ripeness doctrine aims "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967).

The U.S. Supreme Court has noted that the ripeness doctrine is premised upon both constitutional and prudential constraints on courts. Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). One judge has described these two prongs of the ripeness doctrine in this manner:

> In concluding that a case is "unripe," courts often mean that the dispute has not yet matured into a "case" or "controversy" within the meaning of Article III, so that the court is without jurisdiction to enter judgment. Courts have also, however, invoked the ripeness doctrine to justify dismissal in circumstances where adjudication would not necessarily have exceeded the courts' constitutional power but the prospect of injury was nonetheless sufficiently remote or conjectural that the court considers it prudent not to exercise jurisdiction until the dispute has further ripened to produce a more palpable injury.

Bronx Household of Faith v. Bd. of Educ. of City of New York, 492 F.3d 89, 113 (2nd Cir. 2007) (Leval, J., concurring) (citations omitted).

**1.    Conditions (e) and (f)**

We first address Conditions (e) and (f), as challenged by Intervale in Questions 3 and 4 of its Statement of Questions, since those conditions present the clearest examples of issues that are unripe for review and that we are therefore without jurisdiction to hear on appeal.

Condition (e) refers to actions that the Agency of Agriculture plans to take in response to "any additional hoop houses proposed to be built at the Intervale." Decision at ¶ 15(e). Condition (f) similarly refers to how the Agency plans to respond to future petitions by Intervale to build additional farm structures in a mapped floodway. Id. at ¶ 15(f). Although Intervale has suggested in other documents that it may wish to build additional hoop houses in the future (for instance, its "Non-Applicability of Zoning Permit Requirements" form filed with the City listed an intention to build three hoop houses), Intervale's Petition only asked the Agency of

Agriculture for "authorization . . . to construct a hoop house." (Pet. at 1 (emphasis added).) The Agency's Decision on that Petition is all that we have before us. It would thus be speculation to analyze conditions that apply to additional hoop houses or other farm structures that were not proposed in—and are therefore not a part of—Intervale's Petition.[4]

It could well be that Intervale's Petition represents an abandonment of any earlier plans it may have had to build more hoop houses. After all, decisions regarding building additional farm structures are undoubtedly affected by changing economic and marketplace conditions. The current economic environment may well have foreclosed the idea of building additional farm structures for the time being. If Intervale no longer intends to build additional farm structures, we do not even need to reach the ripeness issue because there would be no development activity to which Conditions (e) and (f) would apply. See In re Rivers Dev., LLC Appeals, Nos. 7-1-05 Vtec, 68-3-07 Vtec, 183-8-07 Vtec, 248-11-07 Vtec, & 157-7-08 Vtec, slip op. at 11–12 (Vt. Envtl. Ct. Nov. 21, 2008) (Durkin, J.) (noting that asking a court to pass judgment on a project that the applicant no longer intends to pursue "present[s] a textbook definition of a request for an advisory opinion").

Regardless of whatever plans Intervale might have previously had, or whatever unstated plans it currently has, Intervale's Petition only asks for a determination that building one hoop house conforms to the AAPs. Our Supreme Court has noted that courts "will ordinarily not render decisions involving events that are contingent upon circumstances that may or may not occur in the future." In re Robinson/Keir P'ship, 154 Vt. 50, 57 (1990). We find that the conditions imposed by the Agency of Agriculture on unspecified additional farm structures is similar to what the Public Service Board once did when it evaluated "a speculative scenario that had not occurred and was not before it." In re Existing Rates of Shoreham Tel. Co., 2006 VT 124, ¶ 32, 181 Vt. 57. In that case, the Supreme Court held that the Public Service Board's speculative discussion was dicta and was therefore "not ripe for decision" on appeal to a court. Id.; cf. also In re 232511 Investments, Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409 (noting that it would

---

[4] It bears emphasis that the determination appealed from here is limited to Intervale's Petition, which asks whether its proposed single hoop house would conform to the AAPs. As discussed in more detail in our discussion below of the ripeness of Condition (b), the appealed-from determination does not represent a state or municipal land use permit, but rather an Agency determination that the proposed hoop house meets the requirements of the AAPs, subject to the conditions challenged in this appeal, and is therefore exempt from the general requirement of obtaining a municipal zoning permit. In fact, the filings before us indicate that the City has no intention of requiring that Intervale obtain a zoning permit, given Intervale's representation of its planned agricultural practices.

9

be advisory to address an issue that would not arise until an applicant sought to amend its permit).

For all of these reasons, we hold that the appeal of Conditions (e) and (f) is not currently ripe for review, and we therefore **DISMISS** Intervale's Questions 3 and 4 from this appeal.

### 2.     Condition (b)

We now turn to the more complex analysis of the ripeness of Condition (b)—the condition that is challenged by Intervale's Question 2.  Condition (b) requires Intervale to keep the hoop house skirt detached from the posts and the ground and to keep the ends of the hoop house open.  See Decision at ¶ 15(b).  Although the hoop house has already been constructed, this issue does not appear to be moot because the removal of Condition (b) would presumably free Intervale to close all sides of the hoop house at certain times.  Turning to the ripeness issue, Intervale indicated in its Petition that it "anticipates that it will use the end walls and skirt . . . during the months of April and May."  (Pet. at 4.)  Therefore, unlike the hypothetical situation of Conditions (e) and (f) regarding the construction of new farm structures not yet planned, it is not merely speculation to assume that Intervale is injured by a restriction that prevents it from closing the end walls.  Nevertheless, we conclude that Condition (b) is not ripe for our review.

We find two reasons why it would be premature to hear the appeal of Condition (b) at this time: (1) it might not harm Intervale to abide by this condition; and (2) it might not harm Intervale to ignore this condition.  If either of these rings true, and Intervale is therefore not currently harmed by Condition (b), then we are without a case or controversy to adjudicate.  Without a case or controversy, this Court is constitutionally barred from hearing an appeal.  See, e.g., Hinesburg Sand & Gravel Co., 166 Vt. at 340.  Alternatively, to the extent that there is doubt as to whether Intervale is currently harmed by Condition (b), this uncertainty leads us to find that it would be imprudent for this Court to review this appeal at this time.  As mentioned earlier, the ripeness doctrine is premised upon both constitutional and prudential constraints.  Nat'l Park Hospitality, 538 U.S. at 808.  Thus, even if there is a case or controversy regarding the question of whether Intervale must always keep the ends of its hoop house open, we still find this issue to be currently unripe for review.

### i.     Whether It Harms Intervale to Follow Condition (b)

We first note that it is unclear how onerous a requirement Condition (b) imposes on Intervale, even if Intervale were to follow this condition.  The requirement in Condition (b) that

Intervale keep the skirt detached at all times is what Intervale itself proposed in its Petition. (Pet. at 4.) As for the requirement that Intervale keep the ends of the hoop house open, we simply cannot discern from the record before us how important it is to the use and enjoyment of the hoop house to keep the ends closed. Given that Intervale has only stated that it "anticipates" using the end walls during April and May, (id.), we question whether this rises to the point of being a case or controversy. Our Supreme Court has noted that the "claimed consequences of the controversy must be reasonably expected rather than based on fear or anticipation." Sweezey v. Neel, 2006 VT 38, ¶ 28, 179 Vt. 507 (emphasis added). In Sweezey, a lower court addressed future development that was merely anticipated and not reasonably expected. Our Supreme Court held this to be an impermissible advisory opinion. Id. We would run that same risk here, were we to adjudicate what Intervale "anticipates" it will want to do. (Pet. at 4.)

### ii.      Whether It Harms Intervale to Ignore Condition (b)

It is also unclear whether Intervale faces any consequences if it chooses to ignore the requirements of Condition (b). Although it seems strange to analyze what would happen if Intervale were to ignore Condition (b)—after all, courts generally presume that parties will abide by agency determinations—the U.S. Supreme Court has noted that the ripeness of a case can depend on the likelihood of enforcement. Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 165 (1967). Indeed, in actions where parties claim to be injured by the threat of enforcement— which is essentially what is claimed here—courts must also look at how severe the consequences of a potential enforcement action would actually be. See id.

It is important to explain why Intervale's appeal is analogous to a claim that it is injured by the threat of enforcement. If the Decision being appealed were a land use permit approval or another type of zoning decision regarding the rights of Intervale to make use of its land, Intervale would have a legally cognizable interest in challenging such a decision. But the Decision at issue here was decidedly not a permit or any other type of land use determination. Rather, it was merely a determination of whether Intervale's hoop house plans in the Winooski River floodway conform to the AAPs so as to avoid a later enforcement proceeding.

The Agency of Agriculture has no authority to issue permits or make other land use determinations in this instance, nor does the Agency purport to have done so. Thus, Intervale need not be concerned that the Decision is the type of municipal zoning decision that must be immediately appealed to prevent it from becoming immune to direct or indirect challenges in

11

subsequent proceedings. See, e.g., <u>City of S. Burlington v. Dep't of Corr.</u>, 171 Vt. 587, 588–89 (2000) (mem.) (citing 24 V.S.A. § 4472(d)). Cases like <u>City of South Burlington</u> involve an interpretation of 24 V.S.A. § 4472(d), a statutory provision that only applies to municipal zoning decisions. See, e.g., 24 V.S.A. § 4473 ("It is the purpose of this chapter to provide for review of all questions arising out of or with respect to the implementation <u>by a municipality of this chapter</u>." (emphasis added)). Even if the Decision were a zoning decision, which it was not, the Agency of Agriculture is obviously not a municipality. See 24 V.S.A. § 4303(12) (defining municipality). The finality provisions of 24 V.S.A. § 4472(d) are therefore inapplicable.

Given that the Decision is not a permitting or other zoning decision that places an immediate hindrance on what Intervale can do with its land, this appeal appears to actually arise from the implicit threat that the Agency will later bring an enforcement action against Intervale if Intervale fails to abide by the conditions listed in the Decision. We therefore must analyze whether that threat of future action currently rises to the level of creating a case or controversy that is ripe for review. See <u>Toilet Goods Ass'n, Inc.</u>, 387 U.S. at 165.

As one constitutional scholar has noted, "the more speculative and uncertain the harm, the less likely it is that review will be granted." Erwin Chemerinsky, Constitutional Law: Principles and Policies 104 (2d ed. 2002). Here the harm to Intervale is quite speculative. As we note in greater detail below, we are unaware of where the Agency of Agriculture obtains authority to impose conditions in an AAPs determination. We are therefore without any factual or legal foundation to conclude that the Agency of Agriculture has the lawful authority or established practice of bringing any type of enforcement action against those who ignore such conditions.

The Agency of Agriculture's Decision is not akin to a land use determination. In fact, a close examination of the Decision reveals that it does not even state that closing the ends of the hoop house would violate the AAPs; rather, the Decision states that leaving the ends open (as Condition (b) requires)—and abiding by all of the other listed conditions—would not violate the AAPs. Decision at ¶ 15. Granted, this is a fine distinction, but an important one, since the record before us does not reveal any factual or legal foundation for the imposition of this condition. Thus, although the Agency expects Intervale to comply with all of the listed conditions, we cannot discern whether harm to Intervale may arise in the future, should it ignore a condition that appears to have no factual foundation and for which we have yet to discern any

legal authority to impose. Indeed, if Intervale is correct in its assertion that "flood waters will flow through the proposed hoop house even when it is fully enclosed," (Pet. at 5), then it is difficult to foresee that the Agency of Agriculture would bring an enforcement action based upon the requirements of Condition (b).

This leads us to a further concern with regard to granting judicial review of Condition (b)—namely, Condition (b) may be of no legal effect to Intervale. The Agency's AAPs Decision was not a zoning or other type of decision that hinders a landowner's current development rights. Rather, we cannot discern how the Agency Decision represents anything more than a confirmation of the City's already-rendered determination that Intervale is entitled to a zoning permit exemption for its proposed single hoop house project.

In addressing the underlying basis for the Agency's authority to issue its Decision, we recognize that our legal analysis of this issue walks a fine line between making a jurisdictional determination and prematurely reaching the merits of the appeal that has come before us. After all, in the course of evaluating whether this Court has jurisdiction to hear this case, we ultimately determine that the conditions imposed by the Agency in the course of making its AAPs determination might be without legal effect, which appears to reach the merits of the issue before us. This seems problematic, given that "jurisdictional questions ordinarily must precede merits determinations." Sinochem Int'l Co., 549 U.S. at 431; see also Brigham v. State of Vt., 2005 VT 105, ¶ 9, 179 Vt. 525 (mem.) ("At this early stage in the litigation, . . . a court should be reluctant to dismiss a plaintiff's claims, and should not consider the merits of whether a plaintiff's claims will ultimately succeed."). Nevertheless, courts sometimes must venture into issues that touch upon the merits of a case to determine whether a court has jurisdiction to hear that case. See, e.g., In re LimitNone, LLC, 551 F.3d 572, 578 (7th Cir. 2008) ("It would be awkward, at best, to suggest that . . . courts must resolve their own jurisdiction before proceeding to factual disputes necessary to that very determination."); see also, e.g., Gudaitis v. Adomonis, 643 F. Supp. 383, 385 (E.D.N.Y. 1986) (recognizing that courts can address dispositive jurisdictional issues that "overlap with the merits"). To proceed in this way is not to decide a case on its merits. Rather, we are only addressing this Court's subject matter jurisdiction.

It appears as if the actual subject matter that has come before us—namely, an AAPs determination that imposes conditions upon the future use of Intervale's property—is beyond

anything our Legislature envisioned.[5] When Intervale petitioned the Agency of Agriculture for a determination on whether its proposed hoop house would meet the requirements of the AAPs, the Agency declined to give Intervale a simple yes-or-no answer. The Agency undoubtedly would have been acting within its authority if it had merely given Intervale a yes-or-no ruling on this issue. Indeed, our Legislature encourages agencies to issue "declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency." 3 V.S.A. § 808. But that is not what happened here. Instead of giving a yes-or-no ruling, the Agency stated that building the hoop house "would not violate . . . the AAPs . . . under the following conditions," and the Agency then proceeded to list six conditions to this approval. Decision at ¶ 15.

It is a fundamental rule of law that agencies cannot act beyond the authority conferred on them by statute. See, e.g., Martin v. State of Vt. Agency of Transp. Dep't of Motor Vehicles, 2003 VT 14, ¶¶ 15–16, 175 Vt. 80; see also, e.g., In re Green Crow Corp., 2007 VT 137, ¶ 12 ("We will not . . . sustain a decision in which an administrative body . . . purports to enlarge its own powers beyond those granted by the Legislature.") As our Supreme Court has noted, whatever an agency does "must be authorized by the governing statute." Martin, 2003 VT 14, ¶ 33.

We fail to see where a governing statute grants the Agency of Agriculture the authority to issue the type of conditional ruling that was issued here. The Agency's announcement of a conditional AAPs determination does not appear to be authorized by either 6 V.S.A. §§ 4810–4815 or 10 V.S.A. §§ 1021(f) and 1259(f).

The Agency of Agriculture purports to have issued its AAPs determination under its authority to make declaratory rulings under 3 V.S.A. § 808. See Decision at 1. But 3 V.S.A. § 808 does not allow for conditional rulings. Rather, our Supreme Court has noted that an agency's authority under 3 V.S.A. § 808 is "circumscribed" and "restricted to deciding the applicability of [legal] authorities to a particular set of facts." Town of Cavendish v. Vt. Pub. Power Supply Auth., 141 Vt. 144, 147 (1982) (emphasis added). In this case, Intervale's Petition provided the Agency of Agriculture with "a particular set of facts" as to how the hoop house would be constructed, and the Agency only had the authority to apply the AAPs to that set of facts and determine whether the hoop house—as proposed—complied with the AAPs. Id. We are unaware of the Agency's authority under 3 V.S.A. § 808 or any other statute to go beyond

---

[5] This likely provides one explanation for the resulting confusion over where the Decision should be appealed.

the set of facts presented and create its own list of conditions regarding what would allow the proposed hoop house to meet the AAPs.

The Agency of Agriculture might believe that it has an implied power to act in the way that it did. But agencies can only claim implied powers "[i]n very limited circumstances." Martin, 2003 VT 14, ¶ 29. We do not find implied powers here because there is a qualitative difference between the authority to give a yes-or-no answer to a proposed project and the authority to place one's mark on the details of the project by imposing various conditions upon it, particularly where the record does not reveal an evidentiary proceeding that provided the basis for the conditions imposed.

We note that our Legislature recognizes its power to authorize conditional approval and does so where it deems it warranted. For instance, the Legislature has chosen to allow Act 250 district commissions to issue permits that contain appropriate "requirements and conditions." 10 V.S.A. § 6086(c); accord 10 V.S.A. § 6087(b). Similarly, the Legislature has authorized municipal panels to attach conditions to their approval of land use projects. See 24 V.S.A. § 4464(b)(2). Conversely, there are other circumstances where the Legislature does not allow conditional approval. For instance, when a party appeals an Agency of Natural Resources administrative order requiring specific actions to achieve compliance with applicable environmental laws, this Court cannot alter or add to the conditions of that order. See 10 V.S.A. § 8012(b)(2). In such situations, this Court only has authority to either affirm the order as is or to vacate it altogether and remand it to the Agency of Natural Resources to develop alternative procedures that will achieve environmental compliance. Id. Similarly, a town or city zoning administrator does not have the discretion to attach conditions to a permit; rather, the Legislature limits a zoning administrator's statutory authority to determining whether a project—as proposed—conforms to a literal interpretation of the applicable zoning laws. See 24 V.S.A. § 4448(a).

If the Legislature wished to allow the Agency of Agriculture to attach conditions to an AAPs determination, the Legislature could have exercised its discretionary authority to allow such conditional approval. Indeed, the Legislature has done so in other situations. For instance, when the Agency of Agriculture is evaluating a large farming operation permit, it "may condition or deny a permit on the basis of odor, noise, traffic, insects, flies, or other pests." 6 V.S.A. § 4851(e) (emphasis added). In this instance, the Legislature exercised its power to grant

the Agency this authority, and it did so in a restrictive manner by noting the exact bases on which the Agency can place conditions. See id. Similarly, for the permitting of small and medium farm operations, the Legislature also grants the Agency specific authority to place conditions on permits. See 6 V.S.A. § 4858.

When interpreting statutes, courts must aim to "discern and implement the intent of the Legislature." Merkel v. Nationwide Ins. Co., 166 Vt. 311, 314 (1997). The statutory provisions cited above confirm that the Legislature knows how to grant the Agency of Agriculture the authority to place conditions on its project approvals. It is therefore telling that the Legislature did not give the Agency this authority in the context of AAPs determinations. Cf., e.g., In re Munson Earth Moving Corp., 169 Vt. 455, 465 (1999) ("Where the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly.").

The Agency's AAPs determination at issue here seems in some ways to be bordering on the imposition of best management practices ("BMPs") on Intervale. We again are left to wonder where the Agency has the authority to make such an imposition. We find nothing in the statutory framework that would allow the Agency of Agriculture to require more than what is required by the AAPs. In fact, when our Legislature wants to allow the Agency to impose BMPs upon agricultural operators, it states so explicitly and provides specific safeguards to limit the burden that this might place on farmers. See 6 V.S.A. § 4810(a) (distinguishing between AAPs and BMPs and only allowing BMPs to be required after the Agency of Agriculture makes a determination that the BMPs are practical and cost effective and "that sufficient financial assistance is available to assist farmers in achieving compliance"); see also 6 V.S.A. §§ 4813(b)–(c) (authorizing the Agency of Agriculture to require BMPs "beyond accepted agricultural practices" to ensure water quality in the basin planning process, but only after making a determination "that sufficient financial assistance is available to assist farmers in achieving compliance").

Again, these statutory provisions suggest that the Legislature knows how to grant the Agency of Agriculture the authority to impose BMPs, and that the Legislature chose to provide this authority to the Agency only when it would be done with safeguards in place to protect farmers. It would therefore thwart legislative intent to allow the Agency of Agriculture to

16

impose BMPs beyond the AAPs for basic farm structures, and we fail to see where the Agency would have the authority to do so.

We can compare the Agency of Agriculture's actions here to the actions at issue in another case where the Supreme Court held that an agency had exceeded its statutory authority. See Martin, 2003 VT 14, ¶ 32. In Martin, the plaintiff applied for a vanity plate reading "IRISH." Id. at ¶ 1. A statute applicable at that time stated that the Department of Motor Vehicles ("DMV") "'may refuse to honor any [vanity plate] request that might be offensive or confusing to the general public.'" Id. at ¶ 2 (alteration in original) (citing 23 V.S.A. § 304(d)[6]). The DMV issued regulations that banned certain categories of license plates (including ones like "IRISH"). Id. at ¶ 2 n.2. The Court found those regulations invalid because they went beyond the DMV's statutory authority. Id. at ¶ 32. In particular, the broad statutory authority to determine whether something is "offensive or confusing" did not authorize the DMV to create categories as to which types of license plates met this requirement. Id. at ¶ 20. If even this type of broad statutory authority was not broad enough to allow the DMV's actions in Martin, then it is difficult to see how the much narrower authority given to the Agency of Agriculture here can be read to include the authority to issue conditional approval of a project under the AAPs.

To the extent that the Agency of Agriculture has exceeded its statutory authority by placing conditions on its approval of Intervale's Petition, this provides yet another basis for our conclusion that this case is not yet ripe for review.

Decisions by a governmental agency that are beyond its statutory authority should be considered void from the beginning. As the U.S. Supreme Court has noted, an administrative ruling that "operates to create a rule out of harmony with the statute, is a mere nullity." Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue, 297 U.S. 129, 134 (1936). Although the Vermont Supreme Court does not appear to have squarely addressed this issue to date, it has stated that when a court acts beyond its statutory authority, its ruling is a legal nullity that is void from the beginning, not merely voidable. Hendrick v. Cleaveland, 2 Vt. 329 (1828). That is the general rule for governmental actions that are done without proper authority.

The finality provisions of 24 V.S.A. § 4472(d)—which we again note are not applicable here—do not contradict the general rule that unauthorized governmental actions are void from the beginning, even though courts have given legal effect to unappealed municipal zoning

---

[6] This provision was repealed in 2004 and replaced with more specific language, apparently in part in response to Martin. See 2004 Vt. Laws No. 109, available at http://www.leg.state.vt.us/DOCS/acts.cfm?Session=2004.

17

decisions that are done outside the municipal panel's authority.  Levy v. Town of St. Albans Zoning Bd. of Adj., 152 Vt. 139, 142–43 (1989).  Levy and its prodigy create an exceptional situation whereby a municipal zoning action that is done outside the municipality's powers is void from the beginning, but comes back to life once the appeal period for that action has expired without appeal.  A similar situation can arise when a municipality exceeds its authority in executing a contract.  Such contracts are void from the beginning.  Vt. Dep't of Pub. Serv. v. Mass. Mun. Wholesale Elec. Co., 151 Vt. 73, 86 (1988) ("MMWEC I").  But see 11A V.S.A. § 3.04(a) (noting that corporate actions are treated differently because they "may not be challenged on the ground that the corporation lacks or lacked power to act").  As a result of governmental actions being void from the beginning when they are outside the governmental body's authority, "judicial or equitable doctrines cannot [later] breathe life into them."  Id. at 91. It turns out, however, that the Legislature can breathe life back into such contracts by ratifying them at a later date.  Mass. Mun. Wholesale Elec. Co v. State of Vt., 161 Vt. 346, 358 (1994) ("MMWEC II").  Thus, as MMWEC I and II demonstrate, unappealed municipal zoning actions are not the only actions that can be void from the beginning and yet revived at a later point. Nevertheless, the possibility of revival does not diminish the fact that (when not revived) governmental actions that are done beyond the governmental body's authority are legal nullities.

If the Agency of Agriculture's Decision is void from the beginning and therefore without legal effect, then it is not ripe for review; we cannot exercise jurisdiction over what is essentially a legal nullity.  The Seventh Circuit Court of Appeals realized this when it noted that if a judge acts outside his authority though participation as an arbitrator, this act would be void—a legal nullity—and therefore not a situation that presents a live case or controversy under Article III:

> Having no legal effect, the order would not affect the defendant's interests and Article III would therefore preclude an appeal.  We have encountered this problem before, in cases in which an injunction, being too vague to be enforced by contempt or any other sanction, has no binding effect and is therefore unappealable.  It may seem a considerable paradox that if the judge's error is so flagrant as to make his order void, the appellate court loses jurisdiction.  But a void order has no bite, and Article III precludes an appeal from a harmless order.

DDI Seamless Cylinder Intern., Inc. v. Gen. Fire Extinguisher Corp., 14 F.3d 1163, 1166 (7th Cir. 1994) (Posner, C.J.) (internal citation omitted).

Similarly, if the Agency of Agriculture's Decision is without legal effect, it does not harm Intervale in any way, and we are therefore without jurisdiction to review it.

To be clear, we are not today declaring the Agency's Decision a legal nullity. Rather, we are noting that the record before us suggests that it is, and that this apparent legal nullity provides yet another basis for our legal conclusion that this appeal is currently unripe for review. The U.S. Supreme Court has noted that in these types of situations, it is often preferable to wait until "more light may be thrown on the [agency's] statutory and practical justifications for" its actions. Toilet Goods Ass'n, Inc., 387 U.S. at 166. We leave it to future events to clarify the basis for the Agency of Agriculture's authority in this matter and whether the Decision impacts Intervale in a way that creates a live case or controversy. In the meanwhile, we find that "no irremediable adverse consequences flow from requiring a later challenge to" the Decision. Id. at 165.

For all of these reasons, we hold that the appeal of Condition (b) is not currently ripe for review, and we therefore **DISMISS** Intervale's Question 2 from this appeal.

### Conclusion

For all of the reasons more fully discussed above, we find that the appeal of Condition (a) is moot, and the appeal of Conditions (b), (e), and (f) are currently not ripe for review. As a result, we **DISMISS** all four of the Questions posed by Intervale in its Statement of Questions. In light of our jurisdictional determination today, we do not reach the legal question of the enforceability of the conditions the Agency imposed in its AAPs determination; nor do we disturb the Agency's determination that Intervale's proposed hoop house represents an accepted agricultural practice.

The Agency of Agriculture's motion to dismiss is **GRANTED**. This case is hereby **DISMISSED**. A Judgment Order accompanies this Decision. This concludes the proceedings before this Court in this appeal.

Done at Berlin, Vermont this 24th day of February 2009.

_____
Thomas S. Durkin, Environmental Judge

19